Lilley CAPODANNO, Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

R. T. CAPODANNO, Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

Nos. 78–2210, 78–2211.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule
12(6) March 23, 1979.

Decided June 20, 1979.

Joseph Schoenholz, Newark, N. J., for appellant in 78–2210.

Starr, Weinberg & Fradkin by Edwin N. Gross, Newark, N. J., for appellee in 78–2211.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Jonathan S. Cohen, Gayle P. Miller, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee in 78–2210 and appellant in 78–2211.

Before GIBBONS and HUNTER, Circuit Judges, MEANOR,* District Judge.

## OPINION OF THE COURT

MEANOR, District Judge.

After a considerable legal battle through the New Jersey courts, appellant Lilley Capodanno was held to be entitled to an award of separate maintenance from her husband, R. T. Capodanno. At the conclusion of their litigation, Lilley received from her husband during 1971 a lump sum payment representing arrearages on the award and monthly payments thereafter. When Lilley filed her 1971 federal income tax return, she reported as income the total of the monthly payments received that year but did not report the lump sum arrearage payment. She also sought to file her return as an unmarried individual. The Tax Court held that Lilley and R. T. were not legally separated under the separate maintenance decree and that Lilley could not, therefore, file as an unmarried person. It also held that the lump sum arrearage payment constituted 1971 income to Lilley. The consequence of the latter ruling was that R. T. could deduct the lump sum payment from his gross income. Lilley's appeal challenges the Tax Court rulings that forbid her to file as an unmarried person and require her to report as income the lump sum arrearage payment. The Commissioner supports the Tax Court judgment in all respects, but has filed a protective cross-appeal from that part of the judgment authorizing R. T. to deduct the lump sum arrearage payment. If Lilley is successful in her appeal from being forced to include that lump sum payment as income, the consequence is that R. T. will be unable to deduct it and will be subject to an additional income tax assessment. We affirm the Tax Court in all respects and, hence, dismiss the Commissioner's cross-appeal.

### I

The Capodannos were married in 1938. In October 1964, Lilley left her husband, R. T., and has lived apart from him since that date. On July 8, 1965, Lilley instituted an action for separate maintenance, N.J.S.A. 2A:34–24.[1] The theory of the action was the constructive abandonment of Lilley by R. T. because of his extreme cruelty toward her. Although R. T. conceded that his wife was compelled to leave because of his extreme cruelty, the trial court refused to

---

* H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation.

1. N.J.S.A. 2A:34–24 provides:

    If a husband, without justifiable cause, shall abandon his wife or separate himself from her and refuse or neglect to maintain and provide for her, the court may order suitable support and maintenance to be paid and provided by the husband for the wife and her children, or any of them, by their marriage, or to be made out of his property and for such time as the nature of the case and circumstances of the parties render suitable and proper. The court may compel the defendant to give reasonable security for such maintenance and allowance and may, from time to time, make further orders touching the same as shall be just and equitable and enforce such judgment and orders in the manner provided in section 2A:34–23 of this title. During the time such maintenance shall be allowed, the husband shall not be chargeable with the debts of the wife.

make an award to Lilley. The Superior Court of New Jersey, Appellate Division, affirmed in an unreported opinion, but the New Jersey Supreme Court reversed. *Capodanno v. Capodanno*, 58 N.J. 113, 275 A.2d 441 (1971). The result of the Supreme Court's decision was an award to Lilley of $400 per month retroactive to July 8, 1965, the date upon which her separate maintenance action was instituted. R. T. thus paid Lilley the following sums in 1971:

(a) $19,880 (retroactive lump sum payment representing $400 per month from July 8, 1965 to April 5, 1971).

(b) $3,100 (monthly payments of $400 from April 5, 1971 to November 30, 1971).

On her 1971 federal income tax return, Lilley reported only the $3,100 as income and did not report the lump sum of $19,880 which represented accrued monthly payments. She filed an individual return claiming the status of an unmarried person. R. T. deducted the full amount of his payments on his individual return, and also claimed the tax status of an unmarried person.

On audit, the IRS determined that the arrearage payment of $19,880 was includable as income to Lilley as well as the $3,100 total of monthly payments made following the Supreme Court decision. The IRS also insisted that neither Lilley nor R. T. could file as an unmarried person. The Tax Court[2] agreed with the IRS and held:

1. That the total amount of payments (both the arrearage lump sum and the monthly payments) were income to Lilley;

2. Neither Lilley nor R. T. were entitled to file as an unmarried individual.[3]

The following issues flow from this fact complex and will be discussed and decided in this opinion:

1. May Lilley claim the income tax status of an unmarried individual?[4]

2. Is the amount of $19,880 paid as arrearage under the separate maintenance decree income to Lilley?

## II

Whether Lilley may file as an unmarried individual depends on whether she is legally separated from R. T. within the definition of 26 U.S.C. § 143(2).[5] This, in turn, depends upon the consequences of a separate maintenance decree under New Jersey law.[6]

---

**2.** *R. T. Capodanno v. Commissioner, Lilley Capodanno v. Commissioner*, 69 T.C. 638 (1978).

**3.** R. T. accepts the Tax Court result and does not appeal. There is no dispute over the proposition that the monthly payments made following the Supreme Court decision are income to Lilley. There is a dispute as to whether the lump sum arrearage payment is income to her. As noted, the protective cross-appeal of the Commissioner is directed only to that portion of the Tax Court's judgment permitting R. T. to deduct this sum, for if it is not income to Lilley R. T. cannot deduct it.

**4.** This issue is bottomed on a differential in tax rate depending upon marital status. The 1954 Internal Revenue Code imposes a greater tax upon married individuals filing separate returns than it does upon those married filing a joint return. 26 U.S.C. § 1(a) and (d). The most advantageous tax rate for Lilley would be that imposed upon unmarried persons pursuant to 26 U.S.C. § 1(c).

**5.** 26 U.S.C. § 143(2) says:

An individual *legally separated* from his spouse under a decree of divorce or of sepa-

rate maintenance shall not be considered as married. (Emphasis added.)

**6.** In this case, it makes no difference what the marital status of Lilley and R. T. is for purposes of inclusion of the payments within Lilley's income and the deductibility of the payments by R. T. Their marital status is only relevant here to Lilley's filing category as married filing separately or as unmarried. 26 U.S.C. § 71(a)(1), (2) and (3) mandate the inclusion of support or alimony payments to a present or former wife as income to the wife. Section 71(a)(1) requires, in general, that payments made following and imposed by a decree of divorce or legal separation or a written instrument incident thereto, are income to the wife. Section 71(a)(2) provides, except in the case of a joint return, that payments made under a written separation agreement are includable in the wife's gross income. Section 71(a)(3), which controls here, states:

If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954,

We deem *Weinkrantz v. Weinkrantz*, 129 N.J.Super. 28, 322 A.2d 184 ·(App.Div.1974) to be in point. There, the wife, living apart under a decree of separate maintenance issued under N.J.S.A. 2A:34–24, secured an order that, among other things, required her husband to file a joint income tax return for the year 1972.[7] On the husband's appeal the order was affirmed, the Court holding flatly that a New Jersey decree of separate maintenance does not effect a legal separation. The Court said:

A judgment for separate maintenance entered pursuant to *N.J.S.A.* 2A:34–24, such as the judgment of separate maintenance dated March 11, 1969 here under consideration, goes no further than to adjudge that the husband without justification abandons and separates himself from his wife and refuses and neglects to maintain her. Such a judgment is actually just a money judgment determining the financial extent of the husband's duty to support his wife and children, if any. See 10 *N.J. Practice (Herr, Marriage, Divorce and Separation* (3d ed. 1963), § 525 at 446–447. While a judgment for separate maintenance recognizes the existing *de facto* separation of the husband and wife, it does not sanction or authorize it. A judgment of divorce from bed and board (limited divorce) obtained pursuant to *N.J.S.A.* 2A:34–3 is significantly different from a judgment for separate maintenance in this respect. A judgment of divorce from bed and board decrees a judicial separation (*Rudin v. Rudin*, 104 *N.J.Eq.* 524, 526, 146 A. 351 (Ch. 1929); *Mueller v. Mueller*, 95 *N.J.Super.* 244, 247, 230 A.2d 534 (App.Div.1967)), as does a judgment of divorce (absolute divorce) obtained pursuant to *N.J.S.A.* 2A:34–2.

Thus, in view of the nature and legal effect of a judgment for separate maintenance in this State, we hold that plaintiff and defendant were not legally separated under a decree of separate maintenance within the intendment of § 6013(d)(2) of the Internal Revenue Code of 1954, and that they could therefore file a joint income tax return for the year 1972.

129 N.J.Super. at 33–34, 322 A.2d at 187–188. (emphasis in original).

It is clear that a separate maintenance decree under New Jersey law does not legitimize the living apart of a husband and wife. Separate maintenance is thus different from limited divorce which nullifies the marital obligation of cohabitation. Separate maintenance exists to enforce the husband's obligation of support, and favors a resumption of cohabitation. *Lavino v. Lavino*, 23 N.J. 635, 639–40, 130 A.2d 369 (1957). *Boettiger v. Commissioner*, 31 T.C. 477 (1958) is to the same effect as *Weinkrantz* and *Lavino* with respect to the consequences of a New Jersey decree of· separate maintenance.

The thrust of Lilley's argument here is that since her separate maintenance judgment was based upon extreme cruelty, a ground for divorce in New Jersey, it should be treated as the legal equivalent of a divorce from bed and board. A distinction is sought to be made between separate maintenance decrees founded upon conduct that provides ground for divorce and those issued upon some other basis, such as simple abandonment. The distinction is not tenable.

The separate maintenance statute provides support for the wife whose husband abandons her. The abandonment may be literal as when the husband leaves his wife without cause and refuses to provide support. It may also be constructive as in the situation where the wife separates from her husband because of conduct which would provide her with a cause of action for di-

---

requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

As will be seen, Lilley and R. T. could have filed a joint return for 1971, something which they could not do if unmarried. By virtue of 26

U.S.C. § 215, with exceptions not pertinent here, all payments made by a husband under sections 71(a)(1), (2) and (3) are deductible from his gross income.

7. 26 U.S.C. § 6013(d)(2), which defines marital status for joint return purposes, is identical with 26 U.S.C. § 143(2), quoted *supra* at n.5.

68

vorce. *Urian v. Urian*, 31 N.J.Super. 608, 616, 107 A.2d 558 (App.Div.), *certif. den.*, 16 N.J. 616, 109 A.2d 814 (1954).

At the time of the separate maintenance award issued here, New Jersey required corroboration of the plaintiff spouse's claim for divorce from bed and board or absolute divorce. *Pfeiffer v. Pfeiffer*, 1 N.J. 55, 57, 61 A.2d 736 (1948); *Streader v. Streader*, 18 N.J.Super. 433, 436, 87 A.2d 338 (App.Div. 1952). Corroboration is not required to support a separate maintenance award. *Zehrer v. Zehrer*, 5 N.J. 53, 58, 73 A.2d 911 (1950); *Sperling v. Sperling*, 19 N.J.Super. 570, 573, 89 A.2d 71 (App.Div.1952); *Raffio v. Raffio*, 19 N.J.Super. 76, 78, 88 A.2d 9 (App.Div.1952). It thus is obvious that at the time of its issuance, Lilley's separate maintenance decree could not, on *res judicata* grounds, provide the basis for a divorce from bed and board. Therefore, that decree was not the legal equivalent of such a divorce.

Since the entry of the judgment in the New Jersey courts that ultimately gave rise to this case, the corroboration rule for divorce has been eliminated. N.J. Court Rule 4:79–7 effective September 8, 1975 provides: "All elements of a claim for divorce or nullity may be proved without corroboration."

We do not know whether New Jersey would, in light of this rule, permit a separate maintenance decree, based on factfindings sufficient to establish a ground for divorce, to serve as the *res judicata* basis for a judgment of divorce. The blunt fact of the matter is that Lilley elected separate maintenance rather than divorce. A separate maintenance judgment under New Jersey law still does not legitimize the refusal

to cohabit and does not constitute a legal separation. *Weinkrantz v. Weinkrantz, supra; Lavino v. Lavino, supra.*[8]

Even if a decree for separate maintenance based on extreme cruelty were found to be more akin to a divorce from bed and board than a decree of separate maintenance based on simple abandonment, the IRS need not differentiate between separate maintenance decrees. First, it would be a great and unnecessary burden on the IRS to check into the ground for each decree of separate maintenance in order to determine the tax consequences of the decree. Second, since the purpose of a decree of separate maintenance is to enforce the husband's duty of support to his wife, regardless of the ground for the decree, all such decrees should have the same tax consequence. The New Jersey courts and the Tax Court have held that the tax consequence is not to treat a decree of separate maintenance as a legal separation. Thus, the separate maintenance decree here, even though based on extreme cruelty, does not constitute a legal separation under 26 U.S.C. § 143.

Finally, it is contended that *Legget v. Commissioner*, 329 F.2d 509 (2d Cir. 1964) is "on all fours" and that it was error for the Tax Court to reject it and instead rely upon *Weinkrantz* and *Boettiger*, both *supra. Legget* considered whether a decree for "alimony unconnected with divorce," Fla.Stat. Ann. § 65.09 constituted a legal separation under applicable provisions of the Internal Revenue Code.[9] After a painstaking examination of Florida law, the Second Circuit held that a Florida decree for "alimony unconnected with divorce" was in fact a species of limited divorce and, hence, the

8. New Jersey has held that when a wife seeks separate maintenance upon the ground of the husband's extreme cruelty, she must justify the separation by proof of extreme cruelty to the same extent as if she were suing for divorce on that ground. *Zehrer v. Zehrer*, 5 N.J. 53, 58, 73 A.2d 911 (1950); *Danzi v. Danzi*, 142 N.J.Eq. 662, 61 A.2d 78 (1948). However, as noted in the text above, corroboration of the wife's testimony of extreme cruelty was not required as it was in an action for divorce before the promulgation of N.J. Court Rule 4:79–7.

9. The issue was whether the Leggets were "legally separated" within the meaning of 26 U.S.C. § 71(a)(1) so that the husband could deduct his payments pursuant to 26 U.S.C. § 215(a). As explained by the Court, the timing of the decree there involved was such that no deduction could have taken place if the Florida decree at issue were the legal equivalent of a New Jersey decree of separate maintenance. 329 F.2d at 510 n.1.

Leggets were "legally separated." Since a New Jersey decree of separate maintenance is not a limited divorce or its equivalent, *Legget* is not persuasive here.

For the foregoing reasons, we hold that under New Jersey law a decree of separate maintenance, no matter on what ground it is based, does not constitute a legal separation under 26 U.S.C. § 143(2). Since the Capodannos were "married" for tax purposes and filed separate returns, they must file as "married individuals filing separate returns" under 26 U.S.C. § 1(d).

### III

 The remaining issue is whether the arrearage payment in the lump sum of $19,-880 is includable in Lilley's income pursuant to 26 U.S.C. § 71(a)(3)[10] and, therefore, deductible by R. T. under 26 U.S.C. § 215(a). This depends whether the arrearage payment, despite its lump sum character, nonetheless is to be treated as "periodic payments" under 26 U.S.C. § 71(a)(3).

The law is clear that a lump sum payment made to satisfy arrearages in periodic payments retains the character of periodic payments for income tax purposes. Revenue Ruling 67–11, 1967–1 C.B. 15 states:

[w]here a lump sum is paid in settlement of arrearages in alimony the payment retains the character of the original payments for which it is substituted and if the latter qualifies as "periodic payments" the former does also.

*See Holloway v. United States*, 428 F.2d 140 (9th Cir. 1970).

In *Gale v. Commissioner*, 191 F.2d 79 (2d Cir. 1951), the wife had obtained a retroactive increase in her periodic alimony payments which was paid to her in a lump sum. The Second Circuit held that arrearage payment was nevertheless a periodic payment. The Court stated:

Although the obligation was expressed in lump sum figures which in a sense, it must be acknowledged, became a principal sum, we do not think it was the kind of principal sum meant in § 22(k) I.R.C.

[the predecessor of § 71(a)]. On the contrary, as the aggregate of a series of retroactively increased "periodic" payments, it did not differ tax wise from the payments previously made.

*Id.* at 81.

As the case law and Revenue Ruling demonstrate, the lump sum payment of $19,880 made to satisfy R. T.'s arrearage in his support payments retained the periodic nature of the support payments. Since the $19,880 payment is periodic, the Tax Court was correct in holding the payment includable in Lilley's income under 26 U.S.C. § 71(a)(3) and deductible by R. T. under 26 U.S.C. § 215.

The judgment of the Tax Court will be affirmed and the cross-appeal dismissed.